OPINION OF THE COURT
Loren N. Brown, J.
This proceeding pursuant to CPLR article 78 seeks enforcement of the petitioner’s order to comply, issued on May 21, 1986 to the Village of Ballston Spa. The respondent counterclaims for sanctions based upon the allegedly frivolous nature of this action.
On May 15, 1986, the petitioner, by an inspector employed on the staff of the Division of Safety and Health, New York State Department of Labor (hereinafter DOL), inspected the *1031 Eagle Matt Lee and Union Fire Companies located in the Village of Ballston Spa. It is undisputed that the two fire companies are staffed by volunteer firefighters. It is also undisputed that the respondent provides the building, equipment, and supplies for the companies. The inspection allegedly uncovered three violations of the occupational safety and health standards at the Eagle Matt Lee Company and six violations at the Union Fire Company. The petitioner, on May 21, 1986, issued a notice of violation and order to comply, and sent the notice to the respondent. On December 22, 1986, an agent or agents of the DOL returned to the fire departments and found that, though the Eagle Matt Lee Company had corrected the violations, four violations remained at the Union Fire Company. On December 24, 1986, the DOL issued a notification of failure to abate violation and sent it to the respondent. The deadline for compliance, set by the petitioner as January 26, 1987, passed without compliance. On June 26, 1987, after a second compliance inspection, the attorney for the Department of Labor sent a second notice of failure to abate. The respondent ignored this and a third notice, except that 1 of the 4 violations at the Union Fire Company was apparently corrected. This action followed.
In 1970 Congress passed the Occupational Safety and Health Act. (29 USC § 651 et seq.) The act addressed what appeared to be a growing problem of a lack of safety and healthy environment in the workplace. (Rothstein, Occupational Safety and Health Law § 2, at 4), and contained a comprehensive legislative scheme to insure that all covered workers were provided with working conditions which met specified standards. Section 652 (5) of the act provides:
"[f]or the purposes of this Act * * *
"(5) the term 'employer* means a person engaged in a business affecting commerce who has employees, but does not include the United States or any State or political subdivision of a State”.
The void in coverage of public employees created by section 652 (5) was remedied, at least in the State of New York, by Laws of 1980 (ch 729), adding section 27-a of the Labor Law. Section 27-a (2), entitled The Public Employees Safety and Health Act, or PESH, made the law applicable to every public employee. The legislative findings stated in part:
''The legislature hereby finds and declares that it is a basic right of all employees to work in an environment that is as *1032 free from hazards and risks to their safety as is practicable, and it is the intent of the legislature to insure that this right is also afforded to employees of the state, its counties, cities, towns, villages and other public employers who serve the people of this state.
"A significant percentage of all of those employed in this state are employed by the state or by one of its political subdivisions; many of these public employees perform job functions comparable to those performed by workers in the private sector who are protected by the United States Occupational Safety and Health Act of 1970 (P.L. 91-596 [29 USC § 651 et seq.]). The legislature therefore finds it inappropriate to continue two standards for employee safety, one applicable to those who work in the private sector and one for those who are employed by the state or local government. * * *
"For these reasons, the legislature, in an exercise of the state’s police power, charges the industrial commissioner with the responsibility to insure that all public employees are afforded the same safeguards in their workplace as are granted to employees in the private sector.” (L 1980, ch 729, § 1.)
Section 27-a provides for a State apparatus for its implementation, but the standards to be applied are, generally, those set forth in 29 USC § 651 et seq. (Labor Law § 27-a [4]). In fact, the violation allegedly committed by the two fire companies were Federal standards adopted by the State. (29 CFR 1910.134 [a] [2]; 1910.156 [b] [1]; [c] [2]; [f] [2] [i].)
The court is called upon to decide whether volunteer firefighters are employees of the village within the meaning of section 27-a of the Labor Law. If not, the petitioner had no authority to oversee the activities of the fire companies.
Neither the Federal nor State statute expansively defines the terms "employer” or "employee”. Specifically, neither statute states whether or not a volunteer may be considered an employee. While New York courts have not addressed the issue in reported cases, it appears to be the rule in the Federal context that volunteers are not employees within the meaning of the statute, and that some measure of compensation must be present. (See, Secretary of Labor v Hawk, OSHRC docket No. 6688 [1976].)
The court will be guided by the Federal rule to find that volunteer firefighters are not employees covered by section 27-a of the Labor Law. In so finding, the court, of course, is *1033 mindful that it is construing the State law, not its Federal predecessor. It is also mindful, however, that the two statutes are closely related and have a common purpose. The State law is patterned after the Federal law and extends the benefits of the Federal framework without changing the requirement that an employer-employee relationship must exist.
Federal standard aside, the employment relationship is generally understood to be based upon work in exchange for compensation, and the right to direct the action of the employee.* (65 NY Jur, Workmen’s Compensation, § 145.) To judicially expand the meaning of the employment relationship to include volunteerism would be a gross distortion of its meaning.
Moreover, and perhaps most important, a volunteer firefighter is not within the class of people which OSHA and PESH were meant to protect. A clear purpose of both statutory schemes is to protect the worker from having to make the Hobson’s choice of accepting either an unsafe workplace or unemployment, with its resulting economic privation. Volunteer firefighters need not make that choice. They volunteer not because their livelihoods depend on doing so, but because they want to do so.
The counterclaim for sanctions against the petitioner, based upon the alleged frivolous and unfounded nature of this litigation, is dismissed as there is no basis for awarding sanctions under these circumstances.
The respondent shall submit a judgment dismissing the petition and counterclaim.

 The petitioner has not demonstrated how the respondent, by supplying the building, supplies, and equipment to the fire companies, may direct the actions of volunteers as a true employer could. A volunteer can, after all, stay home when the fire whistle sounds.